IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00461-DME-CBS

MARIO FACUNDO BORREGO BRIONES, JESUS ALBERTO MARINES CARREON, RAUL RIOS SOLIS, PABLO PACHECO DEL REAL, ANTONIO RODARTE GARAMENDI, ERNESTO ALVAREZ SALINAS, JUAN GABRIEL ALEJANDRO RAMIREZ, MANUEL MIJANGOS, JOSE LUIS RUBIO CHAVARRIA, JOSE JESUS VALTIERRA MONTOYA, NICOLAS HERNANDEZ HERNANDEZ, JULIAN FERIA ACOSTA, ROBERTO CARLOS BERNAL CHAVEZ, JESUS GERARDO CUETO LOPEZ, AURELIO CARRILLO HERNANDEZ, MARTIN OLIVA PONCE, GABRIEL MARTINEZ PONCE, ANTONIO CARRILLO HERNANDEZ, SILVANO GARCIA VEGA, CHRISTIAN OSUNA RAMOS, LEOPOLDO ZARCA GONZALEZ, LUIS MATA LOPEZ, JOSE PAZ AGUIRRE HERNANDEZ, PEDRO VARGAS LEDESMA, ANGEL GEOVANNI DURAN NAVARRO, PABLO SANCHEZ REYES, RICARDO ROJO COVARRUBIAS, JORGE ROJO COVARRUBIAS, JUAN SARABIA MENDEZ, PABLO LUNA TORRES, MARTIN ALEJANDRE HERNANDEZ, JUAN GERARDO ALVARADO GATICA, MIGUEL ANGEL BELTRAN ACEVEDO, JOSE DE JESUS GOMEZ GALVAN, MARTIN BARRON VERA, DAVID GUDINO CHAVARRIA, GERMAN MARTINEZ HERNANDEZ, JOEL AGUILAR TORRES, ARMANDO ORTIZ RUBIO, CALIXTRO OVANDO LIMA; RODOLFO DELGADO RODRIGUEZ, RAMON RODRIGUEZ ARAGUZ, ARTEMIO GARCIA MELO, ANTONIO MONCADA RICO, MIGUEEL ANGEL CASTANDEDA MARTINEZ, ORACIO RAMIREZ MARTINEZ, LINDOLFO MARTINEZ CASTRO, RAMIRO AVALOS AMACHO, MARTIN JAIME DURAN MARIN, DANIEL HECTOR DAVILA MARTINEZ, ANSELMO BARRIOS VALDEZ, LUIS ALBERTO DAMIAN ARROYO, FRANCISCO NEGRETE CAMACHO, JUAN LUCIANO ORTIZ DUARTE, DANIEL MORENO VERA, JORGE FLORES BALTAZAR, MARIO ARMANDO FLORES BALTAZAR, EDGAR ESTEBAN RODRIGUEZ HERNANDEZ, PABLO CESAR AGUILAR DIAZ, ALEJANDRO ZUNIGA, SANTIAGO MENDOZA RAMIREZ, FEDERICO GONZALEZ CHANTACA, FERMIN RIVERA GUZMAN, MIGUEL ANGEL GUZMAN ESCOGIDO, RODRIGO HERNANDEZ CAHUICH, VICTOR DANIEL BARRIOS RANGEL, DAVID ARENAS MUNIZ, RICARDO GOZALEZ MIRANDA; and MIDWEST DRYWALL COMPANY, INC.,

Plaintiffs,

v.

JNS CONSTRUCTION SERVICES, LLC, JOHN HERZER, LENO & COMPANY, LLC, and LENO ASEUDO,

Defendants.

1

**DEFENDANT JNS CONSTRUCTION SERVICES LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

COMES NOW, Victor Morales, Kristi L. Blumhardt, and C. Adam Foster, of the law firm of MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, on behalf of Defendant JNS Construction Services, LLC ("JNS"), and in support of JNS's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and F.R.C.P. 9(b), state as follows:

### I. INTRODUCTION

Responding to Plaintiffs' Amended Complaint (Docket No. 23) poses a challenge for JNS because the Amended Complaint generally fails to allege which specific "bad acts" were committed by which Defendants. Similarly, the Amended Complaint does not set forth specific factual allegations explaining how the particular harm that each Plaintiff claims that they suffered was caused by the acts of individual Defendants. The Amended Complaint appears to turn on the allegation that some or all of the Defendants made misrepresentations to some or all of the Mexican citizen Plaintiffs regarding the availability of work in the United States. JNS seeks dismissal of claims that Plaintiffs have failed to plead with the particularity required by F.R.C.P. 12(b)(6), F.R.C.P. 9(b) and the Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

### II. BACKGROUND FACTS

Plaintiffs' Amended Complaint asserts claims on behalf of 68 individual Mexican Citizen Plaintiffs. Docket No. 23 at ¶ 9. It appears that all but eight of the individual Plaintiffs have returned to Mexico. *Id.* The Amended Complaint contains no factual allegations regarding what

2

specific work each individual Plaintiff performed for each Defendant, and fails to specify which Defendants committed which specific "bad acts" alleged in the Amended Complaint.

Plaintiffs' Amended Complaint contains several allegations that are facially contradictory. For instance, ¶¶ 28-30 each allege that Defendants failed to properly pay the Plaintiffs "for all the work they performed." Docket No. 23 at ¶¶ 28-30. But Plaintiffs allege at ¶ 62 that they were "transported to Colorado *absent the work they were promised*." (emphasis added). Plaintiffs cannot plausibly complain both that they were forced to work <u>and</u> that they were denied the opportunity to work.

Additionally, Plaintiffs allege at ¶ 39 of the Amended Complaint that "individual Plaintiffs were left without funds, housing or other living assistance," but assert at ¶ 63 that "Defendants forced individual Plaintiffs to remain in a hotel for an average of nearly 80 hours per week, paying them far below the federal and state minimum wage, or not at all." Apparently Plaintiffs assert both that Defendants forced them to stay in a hotel <u>and</u> left them without housing. Furthermore, Plaintiffs do not allege that Defendants agreed to pay them for time periods during which Plaintiffs were staying in a hotel and sleeping or watching television, as opposed to performing actual labor. Indeed, Plaintiffs do not allege that they actually performed any labor whatsoever.

Plaintiffs also allege at ¶ 63 that "Defendants restricted individual Plaintiffs' travel and communication with the outside world" and that Plaintiffs "felt powerless to escape." But if Plaintiffs spent "an average of nearly 80 hours per week" in the hotel, then logic dictates that Plaintiffs would have spent an average of more than 80 hours per week outside of the hotel, and the Amended Complaint contains no specific allegations regarding what steps individual

3

Defendants allegedly took to restrict Plaintiffs' travel and ability to communicate for the approximately twelve hours per day that Plaintiffs were not "forced" to remain in the hotel.

Plaintiffs also argue at ¶ 5 of the Amended Complaint that "It was the intention of the Defendants' [sic] to control the individual Plaintiffs by making them economically powerless to return to Mexico …" Yet Plaintiffs assert at ¶ 63 that Defendants improperly suggested that they could effectuate Plaintiffs' deportation to Mexico. Again, the Amended Complaint makes no allegations regarding which Defendants made specific improper statements or threats against individual Plaintiffs, offers no information regarding when such statements or threats were made, and does not identify which claims are applicable to which Defendants.

Plaintiffs allege in ¶ 23 that the actions described in paragraph 26 "constitute forced labor and/or trafficking into servitude …" Yet ¶ 26 asserts Defendants did not issue accurate and complete records regarding Plaintiffs' employment. Under these circumstances it is very difficult—if not impossible—for JNS to understand how, when and why Plaintiffs allege that JNS violated their rights.

### III. ARGUMENT

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) the Court upheld dismissal of the plaintiffs' antitrust claims because the complaint failed to allege sufficient facts showing that the antitrust defendants engaged in prohibited parallel conduct, as distinct from independent action taken for a rational business purpose. *See id.* at 1961. The Court clarified that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level …" *Id.* at

1964-65 (citations and internal quotations omitted). To survive a motion to dismiss a complaint must set forth "enough facts to state a claim for relief that is plausible on its face" as opposed to merely pleading sufficient facts to show that the claim is "conceivable." *Id.* at 1974. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965, Fn. 3. The Court urged vigilance "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 1966 (citations and internal quotations omitted).

The Court of Appeals for the 10th Circuit has clarified that the level of specificity required of a given complaint depends on the context of the claims alleged. *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). Thus, a complaint alleging claims based on complex transactions involving multiple parties should set forth the factual basis for the claims in greater detail than, for instance, a simple negligence complaint stemming from an automobile accident. *See id.* Discovery is likely to be expensive and time-consuming in this case due to the seriousness and breadth of the Plaintiffs' allegations and the fact that approximately sixty of the individual Plaintiffs have apparently returned to Mexico. JNS respectfully contends that, given the context of this case and the likely expense of conducting discovery in Mexico, Plaintiffs' claims should be dismissed because the Amended Complaint does not contain sufficient factual allegations to plead claims that are plausible on their face and go beyond mere conclusory allegations. *See, e.g., Atwell v. Gabow*, 2008 WL 906105 (D. Colo. 2008) (in which Judge Kane wrote: "What is required of a well-plead complaint are actual, existing facts, not promises of

future facts or recitations of elements or legal conclusions parading as fact, from which a *plausible,* not theoretically possible, claim for relief may be inferred.") (emphasis in original).

### a. Dismissal of State and Federal Wage Claims

Plaintiffs' claim for unpaid wages at Count I of the Amended Complaint and Count IV, Fair Labor Standards Act, should be dismissed based on the Plaintiffs' failure to articulate what specific work, if any, they claim that each individual Plaintiff performed to earn wages. Although ¶ 43 asserts that each Plaintiff is entitled to receive $910.00/week for three weeks in unpaid wages, it does not offer any factual basis for how that amount was calculated based on the work that individual Plaintiffs allegedly performed. These allegations are insufficient to state a claim for unpaid wages.[1]

Indeed, the Amended Complaint does not assert that Plaintiffs actually performed any work whatsoever. Even if an employment relationship is established, Plaintiffs must actually perform work in order for the minimum wage and overtime requirements to apply.[2]

### b. Dismissal of Claims for Detrimental Reliance and Outrageous Conduct

Plaintiffs' claims for damages due to detrimental reliance (Count II) and outrageous conduct (Count III) should be dismissed because the Amended Complaint does not give the Defendants fair notice regarding the "bad acts" that each Defendant allegedly committed or the statements that each Defendant allegedly made and how those acts or statements resulted in harm

---

[1] Plaintiffs are not entitled to be paid for time that they spent waiting to work. *See* U.S. Dept. of Labor Fact Sheet # 22: Hours Worked Under the Fair Labor Standards Act (FLSA) (Nov. 2007) *available at* http://www.dol.gov/esa/regs/compliance/whd/whdfs22.pdf (time that an employee spent "waiting to be engaged" is not work time).

[2] *See* U.S. Dept. of Labor Fact Sheet # 13: Employment Relationship Under the Fair Labor Standards Act (FLSA), *available at* http://www.dol.gov/esa/regs/compliance/whd/whdfs13.pdf.

6

to Plaintiffs. Dismissal of these claims is warranted under *Twombly* because Plaintiffs have not plead specific facts that show that JNS intentionally mislead Plaintiffs regarding the availability of work in Colorado, as opposed to merely being mistaken regarding the availability of work. *See Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring in part and dissenting in part) ("The insistence on *factual* allegations tending to suggest actionable rather than innocent conduct is not a mere formalism.") (emphasis in original).

    c.    **Dismissal of Claims Under the Alien Tort Statute**

Counts V and VI of the Amended Complaint allege claims in violation of the Trafficking Victims Protection Act. Plaintiffs assert at ¶¶ 79 and 83 that the Alien Tort statute ("ATS"), 28 U.S.C. §1350, confers jurisdiction over these claims.

JNS respectfully contends that this Court should dismiss Plaintiffs' claims under the ATS in light of the Court's holding in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004). In *Sosa*, the Court held that the plaintiff, a Mexican physician, failed to state a claim under the ATS based on his extra-judicial arrest and abduction by the U.S. Drug Enforcement Agency. The *Sosa* Court wrote:

> Congress intended the ATS to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations. Uppermost in the legislative mind appears to have been offenses against ambassadors, violations of safe conduct were probably understood to be actionable, and individual actions arising out of prize captures and piracy may well have also been contemplated. But the common law appears to have understood only those three of the hybrid variety as definite and actionable, or at any rate, to have assumed only a very limited set of claims. As Blackstone had put it, "offences against this law [of nations] are principally incident to whole states or nations," and not individuals seeking relief in court. (internal citations omitted).

*Id.* at 720. Thus, "courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a

specificity comparable to the features of the 18th-century paradigms we have recognized." *Id.* at 725.

Applying *Sosa*, the 10th Circuit held in *Cisneros v. Aragon*, 485 F.3d 1226 (10th Cir. 2007) that the district court lacked jurisdiction under the ATS to hear the tort claims of a Mexican citizen against a U.S. citizen arising out of the plaintiff's alleged statutory rape and sexual assault by the defendant. The *Cisneros* court held that the plaintiff's allegation that the defendant's conduct violated U.S. criminal law was insufficient to show that the conduct violated the law of nations as it was understood at the time that Congress enacted the ATS, writing: "A United States statute may or may not express 'a norm of international character.'" *Id.* at 1230. The *Cisneros* court also rejected the plaintiff's contention that citations to legislation passed by member-nations of Interpol or the United Nations Convention on the Rights of the Child established jurisdiction under the ATS, holding that "neither source states norms of international law that satisfy the 'requirement of clear definition' set forth in *Sosa*." *Id.* at 1230. "Moreover, the law of nations, particularly the subset of that law enforceable under the ATS, does not include a norm simply because the norm is enshrined in the domestic law of all civil societies." *Id.* at 1231. Thus, consistent with *Sosa*, the 10th Circuit requires a plaintiff to allege a claim that violates the law of nations as it was clearly understood in the eighteenth century in order to invoke the jurisdiction of the Federal courts under the ATS.

The case of *John Roe v. Bridgestone Corp.*, 492 F.Supp.2d 988 (S.D. Ind. 2007) is also instructive in this regard. In that case, Liberian rubber plantation workers asserted claims under the ATS, alleging that the defendants committed actionable torts by forcing plaintiffs to work in dangerous and low-paying jobs and keeping them isolated on the rubber plantation under

8

conditions that made them "modern day slaves." *Id.* 995. The *Bridgestone* court wrote that "the adult plaintiffs in this case allege labor practices that lie somewhere on a continuum that ranges from those clear violations of international law (slavery or labor forced at the point of soldiers' bayonets) to more ambiguous situations involving poor working conditions and meager or exploitative wages." *Id.* at 1010. Observing that the "conclusory label" of "forced labor" was not decisive, the court rejected the plaintiffs' contention that the ILO Forced Labour Convention (No. 29)—cited at ¶ 76 of the Amended Complaint in this case—established a norm of international law that was sufficiently universal and well-defined to support the Plaintiffs' ATS claim. *Id.* at 1012-14. This was particularly true because the *Bridgestone* plaintiffs did not allege any of the indicators of forced labor "other than those indicating that the persons might lose the same jobs they say they are being forced to perform." *Id.* at 1014.

Although the *Bridgestone* plaintiffs alleged that they "were placed in fear for their lives, were deprived of their freedom, and were forced to suffer severe physical and/or mental abuse designed to coerce them into working on the Firestone Plantation ..." the court held that, under *Twombly*, "[i]n the absence of more specific factual allegations, these conclusory allegations add nothing to the complaint." *Id.* at 1017. The court also noted that the ILO definition of forced labor "does not cover situations of pure economic necessity, as when a worker feels unable to leave a job because of the real or perceived absence of employment alternatives." *Id.* at 1018 (citations and internal quotations omitted). The *Bridgestone* court therefore granted the defendants' motion to dismiss the adult plaintiffs' claims under the ATS.

Like the *Bridgestone* plaintiffs, Plaintiffs in this case have not alleged that Defendants violated a sufficiently clear and universal norm of international law to survive a motion to

9

dismiss in light of the Court's holdings in *Twombly* and *Sosa*. Because the Amended Complaint asserts that this Court's jurisdiction to hear Counts V and VI is grounded in the ATS, it follows that this Court should dismiss Counts V and VI of the Amended Complaint if it finds that Plaintiffs have not stated a claim under the ATS.

### d. Dismissal of Trafficking Claims

Although the claims are not well-differentiated, it appears that both Counts V and VI of the Amended Complaint assert claims under 18 U.S.C. § 1595 for alleged violations of laws prohibiting forced labor and human trafficking. These claims should be dismissed under *Twombly* because the Amended Complaint fails to specify when individual Defendants allegedly committed specific acts that constitute human trafficking. As noted above, the Amended Complaint appears to allege that the "forced labor" that the Plaintiffs performed involved staying in a hotel and not working, as opposed to performing actual "labor" as the term is normally understood. Thus, Plaintiffs appear to allege both that JNS forced them to work and wrongly denied them the opportunity to work. Similarly, Plaintiffs apparently allege that JNS threatened to have them deported to Mexico while at the same time wrongly preventing them from returning to Mexico.

Although the Amended Complaint contains numerous allegations regarding the hardship caused by Plaintiffs' poverty, lack of sophistication and inability to speak English, Plaintiffs cannot plausibly allege that JNS was responsible for their lack of education or poverty. Nor does the Complaint allege that JNS is a "Mexican loan shark," or that JNS refused to hire individuals who did not borrow money from loan sharks. *See Bridgestone*, 492 F.Supp. at 1018 ("The court assumes that plaintiffs do not have better choices [than working on defendants' rubber

plantation] available to them as a practical matter. But the absence of those better choices is not the legal responsibility of these defendants.").

Plaintiffs state at ¶ 32 of the Amended Complaint that their H2B Visas only permitted them to work for JNS. To the extent that Plaintiffs imply that a JNS employee told them that they would lose their legal immigration status if they sought work from an employer other JNS, Plaintiffs do not assert that such a statement of the governing law was incorrect. In sum, the vague, conclusory and facially contradictory assertions in the Amended Complaint do not comply with the *Twombly* Court's requirements for a well-plead complaint.

e.  **Plaintiffs' RICO and Civil Conspiracy Claims Should be Dismissed**

Plaintiffs allege violations of RICO at Count VII of the Amended Complaint, and allege civil conspiracy at Count VIII. In order to plead a RICO cause of action a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). RICO "was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007).

A properly-plead RICO claim must also allege damage to "business or property." 18 U.S.C. § 1964(c). The Amended Complaint fails in this regard because it contains no specific allegations regarding how individual defendants damaged the Plaintiffs' business or property. The RICO claim also fails because Plaintiffs do not allege that the scheme they claim that Defendants perpetrated had an enterprise-like structure. *See Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 804 (7th Cir. 2008) (upholding dismissal of RICO claim where

complaint failed allege "a structure of any kind" that would support a claim that the defendants operated an illegal enterprise).

The Amended Complaint also fails to allege particularized facts showing that Defendants engaged in "a pattern of racketeering activity," as required by 18 U.S.C. § 1961. ¶ 92 of the Amended Complaint purports to describe the Defendants' predicate acts, but each of these predicate acts relates to the same alleged trafficking scheme. Plaintiffs' allegations are thus insufficient to allege a pattern of racketeering activity. Plaintiffs also allege that Defendants contracted with labor contractors and employers "over the course of multiple years." Yet it appears that the specific events discussed in the Complaint took place in a period of less than a year. RICO plaintiffs must also prove that the defendants' conduct poses a threat of continuing criminal activity. "The duration of the alleged racketeering activity is perhaps the most important element of RICO continuity." *Jennings*, 495 F.3d at 473-74 (quotations and internal citations omitted). Thus, the *Jennings* court held that a time period of ten months of alleged criminal activity "is too short a time to show the necessary continuity for a 'pattern' of racketeering." *Id.* at 474 (citing numerous Federal appellate courts holding that acts occurring over time periods of twelve months or less are insubstantial to show a pattern of racketeering).

The 10th Circuit has observed that "[t]he *Twombly* Court was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged conspiracies. Given such a complaint, a defendant seeking to respond to plaintiffs; conclusory allegations ... would have little idea where to begin.'" *Robbins,* 519 F.3d at 1248 (quoting *Twombly*, 127 S.Ct. at 1971, Fn. 10). Thus, in dismissing the plaintiffs due process claims, the *Robbins* court noted: "Given the complaint's use of either the collective term 'Defendants' or a

list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.* at 1250. In this case, Plaintiffs' failure to plead the factual basis for their conspiracy claim warrants the claim's dismissal.

  **f. Plaintiffs Have Not Sufficiently Plead a Claim for Obtaining Workmen by Misrepresentation**

The second Count VII[3] in the Amended Complaint asserts a state claim for obtaining workmen by misrepresentation in violation of C.R.S. § 8-2-107, which provides a private right of action for violations of C.R.S. § 8-2-104. In order to state a claim under C.R.S. § 8-2-104 a plaintiff must show that he was already employed at the time that the defendant offered him employment. *Schur v. Storage Tech Corp.*, 878 P.2d 51, 53 (Colo. App. 1994). The Amended Complaint contains no such allegations.

Additionally, "[t]he elements a plaintiff must establish to sustain an action under § 8-2-104 are the same as those for common law fraud." *Nelson v. Gas Research Institute*, 121 P.3d 340 (Colo. App. 2005). "Fraud requires more than the mere nonperformance of a promise or a failure to fulfill an agreement to do something at a future time." *Id.* Thus, the *Nelson* court upheld the trial court's grant of summary judgment on the plaintiff's claim under C.R.S. § 8-2-104 because it found that the defendant merely made non-actionable statements regarding future events.

Plaintiffs' state claim for obtaining workmen by misrepresentation should be dismissed because the Amended Complaint fails to meet the requirement of pleading fraud with

---

[3] There appears to be a typographical error in the Amended Complaint because both the RICO claim and the claim for obtaining workmen by misrepresentation are designated as "Count VII."

particularity under F.R.C.P. 9(b), and does not contain factual allegations sufficient to demonstrate that JNS made actionable fraudulent statements, as opposed to non-actionable statements concerning future events.

### g.  Plaintiffs Are Not Entitled to Joint and Several Relief

Paragraph 2 of Plaintiffs' Prayer for Relief (Docket No. 23) asks this Court to grant "judgment in favor of the individual Plaintiffs, jointly and severally, in their claims under FLSA …" Plaintiffs cite no authority in support of the contention that they are entitled to joint and several relief, and the interests of justice would not be served by allowing one Plaintiff to collect another Plaintiff's unpaid wages, if any. JNS requests that this Court deny Plaintiffs' requested relief.

### h.  Midwest Drywall Has Not Plead Any Claims

Midwest Drywall Company, Inc. ("Midwest Drywall") does not assert any claims against Defendants. Again, Plaintiffs' claims include (1) unpaid wages and statutory penalties; (2) damages due to detrimental reliance; (2) damages for outrageous conduct; (3) fair labor standards act; (4) human trafficking; (5) forced labor; (6) RICO; (7) obtaining workmen by misrepresentation; and, (8) civil conspiracy. (Docket No. 23). Notably, all of the claims for relief, with the exception of civil conspiracy, discuss "individual Plaintiffs" only - meaning the sixty eight (68) individuals – not Midwest Drywall. The civil conspiracy claim simply asserts "Plaintffs" have sustained damages, but does not explain what the conspiracy was or how and why Midwest Drywall suffered damages. Midwest Drywall is obligated to provide facts supporting its "entitlement to relief … more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65.

14

Midwest Drywall therefore fails to allege any claims upon which relief can be granted and thus all of its claims should be dismissed as well.

## IV. CONCLUSION

JNS respectfully requests that this Court dismiss Plaintiffs' claims against it for failure to state a claim under F.R.C.P. 12(b)(6) and F.R.C.P. 9(b), and requests an award of attorneys' fees and costs incurred in responding to Plaintiffs' claims.

DATED this 12th day of May, 2008.

*[signature]*

Victor M. Morales
Kristi L. Blumhardt
C. Adam Foster
MCELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1700 Broadway, Suite 1900
Denver, Colorado 80290
Tele: (303) 293-8800
*Attorneys for Defendants JNS Constructions Services, LLC and John Herzer*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 12th day of May, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Donald J. Kaufman
kaufman@coloradoattorney.com
Kaufman & Kaufman, LLC
*Attorneys for Plaintiffs*

Kenneth R. Stettner
Bruce Anderson
banderson@stetmil.com
Stettner Miller, P.C.
*Attorneys for Midwest Drywall Company, Inc.*

    *s/ C. Adam Foster*
_____
Victor M. Morales
Kristi L. Blumhardt
C. Adam Foster
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1700 Broadway, Suite 1900
Denver, Colorado 80290
Tele: (303) 293-8800
Fax: (303) 839-0036
kblumhardt@mdmlawco.com