IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00461-DME-CBS

MARIO FACUNDO BORREGO BRIONES, JESUS ALBERTO MARINES CARREON, RAUL RIOS SOLIS, PABLO PACHECO DEL REAL, ANTONIO RODARTE GARAMENDI, ERNESTO ALVAREZ SALINAS, JUAN GABRIEL ALEJANDRO RAMIREZ, MANUEL MIJANGOS, JOSE LUIS RUBIO CHAVARRIA, JOSE JESUS VALTIERRA MONTOYA, NICOLAS HERNANDEZ HERNANDEZ, JULIAN FERIA ACOSTA, ROBERTO CARLOS BERNAL CHAVEZ, JESUS GERARDO CUETO LOPEZ, AURELIO CARRILLO HERNANDEZ, MARTIN OLIVA PONCE, GABRIEL MARTINEZ PONCE, ANTONIO CARRILLO HERNANDEZ, SILVANO GARCIA VEGA, CHRISTIAN OSUNA RAMOS, LEOPOLDO ZARCA GONZALEZ, LUIS MATA LOPEZ, JOSE PAZ AGUIRRE HERNANDEZ, PEDRO VARGAS LEDESMA, ANGEL GEOVANNI DURAN NAVARRO, PABLO SANCHEZ REYES, RICARDO ROJO COVARRUBIAS, JORGE ROJO COVARRUBIAS, JUAN SARABIA MENDEZ, PABLO LUNA TORRES, MARTIN ALEJANDRE HERNANDEZ, JUAN GERARDO ALVARADO GATICA, MIGUEL ANGEL BELTRAN ACEVEDO, JOSE DE JESUS GOMEZ GALVAN, MARTIN BARRON VERA, DAVID GUDINO CHAVARRIA, GERMAN MARTINEZ HERNANDEZ, JOEL AGUILAR TORRES, ARMANDO ORTIZ RUBIO, CALIXTRO OVANDO LIMA; RODOLFO DELGADO RODRIGUEZ, RAMON RODRIGUEZ ARAGUZ, ARTEMIO GARCIA MELO, ANTONIO MONCADA RICO, MIGUEEL ANGEL CASTANDEDA MARTINEZ, ORACIO RAMIREZ MARTINEZ, LINDOLFO MARTINEZ CASTRO, RAMIRO AVALOS AMACHO, MARTIN JAIME DURAN MARIN, DANIEL HECTOR DAVILA MARTINEZ, ANSELMO BARRIOS VALDEZ, LUIS ALBERTO DAMIAN ARROYO, FRANCISCO NEGRETE CAMACHO, JUAN LUCIANO ORTIZ DUARTE, DANIEL MORENO VERA, JORGE FLORES BALTAZAR, MARIO ARMANDO FLORES BALTAZAR, EDGAR ESTEBAN RODRIGUEZ HERNANDEZ, PABLO CESAR AGUILAR DIAZ, ALEJANDRO ZUNIGA, SANTIAGO MENDOZA RAMIREZ, FEDERICO GONZALEZ CHANTACA, FERMIN RIVERA GUZMAN, MIGUEL ANGEL GUZMAN ESCOGIDO, RODRIGO HERNANDEZ CAHUICH, VICTOR DANIEL BARRIOS RANGEL, DAVID ARENAS MUNIZ, RICARDO GOZALEZ MIRANDA; and MIDWEST DRYWALL COMPANY, INC.,

Plaintiffs,

v.

JNS CONSTRUCTION SERVICES, LLC, JOHN HERZER, LENO & COMPANY, LLC, and LENO ASEUDO,

Defendants.

### REPLY BRIEF IN SUPPORT OF DEFENDANT JNS CONSTRUCTION SERVICES, LLC's MOTION TO DISMISS

COMES NOW, Victor M. Morales, Kristi L. Blumhardt, and C. Adam Foster of the law firm of MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, on behalf of Defendant JNS Construction Services, LLC ("JNS"), and respectfully submit JNS's Reply Brief in Support of its Motion to Dismiss, stating as follows:

### Preliminary Statement

On June 6, 2008, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. As discussed in its forthcoming Objection to Plaintiffs' Motion for Leave to Amend, JNS opposes further amendment of the Plaintiffs' Complaint. Nonetheless, in the interest of judicial economy, this brief will explain why Plaintiffs' claims in the Second Amended Complaint should be dismissed even if this Court grants Plaintiffs' Motion for Leave to Amend. The primary differences between the Amended Complaint and the proposed Second Amended Complaint appear to be that the Second Amended Complaint contains new allegations at paragraphs 35-54 and specifically asserts two claims for relief on behalf of Plaintiff Midwest Drywall Company ("Midwest"). The remainder of the Second Amended Complaint is essentially unchanged from the Amended Complaint. Under these circumstances, JNS respectfully asks this Court to hold that the flaws identified in JNS's Amended Complaint are also fatal to the Second Amended Complaint. Such a holding would save time and promote judicial economy by obviating the need for further briefing on issues that have already been fully briefed. Plaintiffs would not be prejudiced since they were fully aware of the premises of JNS's Motion to Dismiss when they drafted the Second Amended Complaint, as demonstrated by the

1

fact that Plaintiffs filed both their Response to JNS's Motion to Dismiss and their Motion for Leave to Amend on June 6, 2008.

**Plaintiffs Have not Stated a Claim Under F.R.C.P. 12(b)(6), F.R.C.P. 9(b) and *Twombly***

When served with a complaint most defendants will ask themselves a simple question: "What is it that the Plaintiff says I did wrong?" The upshot of the Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) is that a defendant should be able to answer this question based purely on the information contained in the four corners of the complaint, and without conjecture or reference to outside information. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 at Fn 2 ("… courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.).

Plaintiffs appear to argue that the allegation that Defendants are jointly and severally liable because they engaged in an alleged conspiracy relieves Plaintiffs of the obligation to allege that specific defendants engaged in specific acts. The holdings in *Twombly* and *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) undercut this argument because both courts dismissed claims for failure to allege sufficiently particularized facts to establish that the defendants engaged in a conspiracy. Plaintiffs do not dispute that, to the extent that they allege that Defendants engaged in fraudulent conduct, they are required to "state with particularity the circumstances constituting fraud" under F.R.C.P. 9(b). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 127 S.Ct. at 1965 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Plaintiffs imply that the Court's holding in *Erickson v Pardus*, 127 S.Ct. 2197 (2007) modified the plausibility standard enunciated in *Twombly*. JNS notes that *Erickson* involved a

2

*pro se* prisoner plaintiff, and the *Erickson* Court quoted *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) for the proposition that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Giarratano v. Johnson*, 521 F.3d 298, 304 at Fn. 5 ("We do not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain 'more than labels and conclusions' …").

Although parties are permitted to plead in the alternative under some circumstances, allegations that are facially contradictory cannot logically comport with *Twombly*'s plausibility standard. For instance, if the Plaintiffs in this action alleged that John Herzer was in Glenwood Springs, Colorado at 4:00 p.m. on December 15, 2008, and then in the next complaint paragraph alleged that John Herzer was in Monterrey, Mexico at 4:00 p.m. on December 15, 2008, such contradictory allegations would fail to state a plausible claim because it is impossible for one person to be in two different places at the same time.

Here, several key contradictions prevent the Amended Complaint from stating plausible claims. These contradictions persist in identical allegations in the Second Amended Complaint. For instance, Plaintiffs allege both that the individual Plaintiffs were denied the opportunity to work and then that the Defendants failed to properly pay the Plaintiffs "for all the work they performed." Amended Complaint, Docket #23 at ¶¶ 28-30, 62; Second Amended Complaint, Docket #51-2 at ¶¶ 32-34, 87. Plaintiffs do not articulate in either Amended Complaint what specific labor they allegedly performed that would entitle them to wages. Perhaps Plaintiffs want to be paid even though they did not do any work. Although JNS doubts that Plaintiffs' subjective desire to be paid for work they did not perform could form the basis of a viable claim,

3

if that is what Plaintiffs wanted they should have attempted to allege sufficient facts to show that they were entitled to relief.

Plaintiffs also apparently assert both that Defendants forced them to stay in a hotel and left them without housing. Amended Complaint, ¶¶ 39, 63; Second Amended Complaint ¶¶ 63, 87. Additionally, although individual Plaintiffs allege that they were forced to remain in a hotel for approximately 80 hours per week, they do not allege that Defendants attempted to control their movements or required them to be in a certain place for the remainder of the time that they were allegedly within the Defendants' control. Common sense dictates that 80 hours per week would not be an abnormally large amount of time to spend in a hotel room sleeping, watching television or performing normal activities such as toileting and getting dressed if one was living in the hotel. Plaintiffs do not explain these fundamental contradictions in their Response Brief, nor do they cure these flaws in the proposed Second Amended Complaint.

In sum, there are several key problems with both the Amended Complaint and the Second Amended Complaint; namely, couching legal conclusions as factual allegations, failure to provide the required notice of which specific "bad acts" were allegedly perpetrated by which specific Defendants, and alleging facts that are so fundamentally contradictory that the claims are not plausible on their face. The remainder of this Brief will address why the specific claims in the Amended Complaint—and in the Second Amended Complaint, if it is accepted by this Court—should be dismissed.

### Dismissal of State and Federal Wage Claims

Plaintiffs' claims for unpaid wages and violation of the Fair Labor Standards Act ("FLSA") should be dismissed due to the Plaintiffs' refusal to allege what specific work, if any,

each Plaintiff allegedly performed for specific Defendants in order to earn wages. Plaintiffs do not disagree with the Department of Labor sources cited at Page 6 of JNS's Memorandum of Law that state that time an employee spends "waiting to be engaged" is not work time, or that Plaintiffs must actually perform work in order for the minimum wage and overtime requirements of the FLSA to apply. Plaintiffs' conclusory statements that they performed work for Defendants are insufficient to state a claim for relief, particularly in light of the contradictory allegations that Plaintiffs were denied the opportunity to work.

### Dismissal of Claims for Detrimental Reliance and Outrageous Conduct

Plaintiffs' claims for detrimental reliance and outrageous conduct should be dismissed due to their failure to allege specific facts showing that JNS intentionally misled Plaintiffs regarding the availability of work in Colorado. *See Twombly*, 127 S.Ct. at 1961 (upholding dismissal of antitrust suit for failure to allege sufficient facts showing prohibited parallel conduct, as opposed to independent action taken for a rational business purpose). Plaintiffs do not claim that JNS profited from the allegedly fraudulent scheme, and without explaining how they allege that JNS intended to make money by transporting Plaintiffs to Colorado without lining up work they cannot plausibly allege that JNS intentionally misled them, rather than merely being mistaken about the availability of jobs with Midwest.

### Dismissal of Claims under the Alien Tort Statute and Trafficking Claims

Plaintiffs assert at paragraphs 79 and 83 of the Amended Complaint, and at paragraphs 99 and 103 of the proposed Second Amended Complaint, that the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, confers jurisdiction over Plaintiffs' claims based on the Trafficking Victims Protection Act ("TVPA"). Thus, on their own terms, these claims should be dismissed if

5

Plaintiffs have failed to state a claim under the ATS.  Plaintiffs do not dispute that the Court's holding in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) and the Tenth Circuit case of *Cisneros v. Aragon*, 45 F.3d 1226 (10th Cir. 2007) set forth the pertinent standard for determining whether Plaintiffs have adequately pled claims under the ATS.  Yet they offer no compelling rationale for their apparent contention that their claim under the ATS "rests on a norm of international character accepted by the civilized world and defined a specificity comparable to the futures of the 18th century paradigms." *Sosa* 542 U.S. at 725.  Significantly, the *Sosa* Court only identified three violations of international law that were universally recognized in the eighteenth century—violations of safe conducts, violations of ambassadors' rights and piracy. *Id*. at 720.  Although Plaintiffs strenuously assert that the Defendants' conduct in this case was so reprehensible that it violated universal norms, they do not set forth sufficiently detailed facts to support this contention.  For instance, individual Plaintiffs state at Page 8 of their Response Brief that they were "so economically destroyed by the Defendant's [sic] criminal conspiracy" that they were "defacto [sic] prisoners of the Defendants."  Yet Plaintiffs cite no authority in support of their apparent contention that JNS violated a universal norm of international law by not giving Plaintiffs money to return to Mexico at the time, and in the manner, of their choosing.

Nor do Plaintiffs convincingly distinguish the case of *John Roe v. Bridgestone Corp*., 492 F. Supp. 2d 988 (S. D. Ind. 2007).  The teaching of *Bridgestone* is that although "slavery or labor forced at the point of soldiers' bayonets" may give rise to a claim under the ATS, allegations of "poor working conditions and meager or exploitative wages" do not.  *Id*. at 1010.  The *Bridgestone* court also held that allegations that Plaintiffs "were placed in fear for their lives, were deprived of their freedom, and were forced to suffer severe physical and/or mental abuse"

6

were insufficient to state a claim for relief under the ATS under *Twombly* because "[i]n the absence of more specific factual allegations, these conclusory allegations add nothing to the Complaint." *Id*. at 1017. Although Plaintiffs allege that many of them borrowed money from "Mexican loan sharks" in order to come to the United States, they do not allege that JNS acted as a loan shark or required them to borrow money from loan sharks as a condition of employment. Under *Bridgestone*, the fact that Plaintiffs apparently did not believe that they had better employment alternatives than traveling to Colorado to work—or that they may have been broke, unsophisticated, unable to speak English, or felt isolated—does not compel the conclusion that they were victims of human trafficking.

As Plaintiffs acknowledge, their H2B visas only permitted them to work for JNS. To the extent that Plaintiffs allege that an agent or employee of JNS told them that they would be in violation of their immigration status if they went to work for a company other than JNS, they do not dispute that this was an accurate statement of law.[1] Moreover, Plaintiffs' failure to state what employee or agent of JNS made specific statements or engaged in specific acts that had the effect of intimidating or coercing the Plaintiffs is fatal to their claim against JNS under the TVPA.

### Plaintiffs' RICO and Civil Conspiracy Claims Should be Dismissed

Plaintiffs do not disagree that in order to plead a RICO cause of action under *Sedima S.P.R.L. v. Imirex, Co.*, 473 U.S. 479, 496 (1985) that they were required to allege "1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." However, Plaintiffs fail to allege that the scheme they claim that Defendants perpetrated had an enterprise-like structure that would give rise to a valid RICO claim. Nor do Plaintiffs argue that the Complaint alleges

---

[1] Plaintiffs' use of the collective term "Defendants" makes it impossible to tell whether they allege that JNS made such statements.

that they suffered damage to "business or property" as required by 18 U.S.C. § 1964(c). Finally, Plaintiffs offer no convincing rationale for their apparent contention that their RICO allegations establish "a pattern of racketeering activity" as required by 18 U.S.C. § 1961. Acts occurring over time periods of twelve months or less are insufficient to show a pattern of racketeering activity as a matter of law. *See, e.g. Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) (citing numerous holdings). Although Plaintiffs allege that JNS and related entities acted as labor contractors over a period of several years, they do not allege that JNS committed any predicate acts within that time. Rather, the only illegal acts alleged in the Complaint took place within a period of a few months, which is an insufficient period of time to establish a pattern of racketeering activity.

Turning to Plaintiffs' civil conspiracy claim, as the Tenth Circuit noted in *Robbins*, "[t]he *Twombly* court was particularly critical of complaints that 'mentioned no specific time, place or person involved in the alleged conspiracies.' *Robbins*, 519 F.3d at 1248 (quoting *Twombly* 127 S. Ct. at 1971, fn. 10). Under *Robbins*, "the complaint's use of … the collective term 'defendants' with no distinction as to what acts are attributable to whom" warrants dismissal of the conspiracy claim and all of the other claims because the Complaint makes no particularized showing of what discreet "bad acts" JNS allegedly performed to cause individualized harm to specific Plaintiffs. In short, Plaintiffs' conspiracy claim should be dismissed because it merely recites the legal elements of a conspiracy under the guise of factual allegations.

**Dismissal of the State Claim for Obtaining Workmen by Misrepresentation**

Plaintiffs do not address in their Response Brief the holding in *Schur v. Storage Tek Corp*, 878 P.2d 51, 53 (Colo. App. 1994), which requires a plaintiff to show that he was already

8

employed at the time the defendant offered employment in order to allege a state law claim for obtaining workmen by misrepresentation in violation of C.R.S. § 8-2-107.  The Plaintiffs' failure to allege that they left jobs in Mexico in order to work for JNS is thus fatal to the state law claim for obtaining workmen by misrepresentation.  Nor does Plaintiffs' Response Brief address JNS's argument that the alleged statements of JNS's agents or employees were merely non-actionable statements regarding future events that do not allege the elements of a common law fraud claim, as required by C.R.S. § 8-2-104.  *See Nelson v. Gas Research Institute*, 121 P.3d 340 (Colo. App. 2005) ("the elements that plaintiff must establish to sustain an action under § 8-2-104 are the same as those for common law fraud.").

### Midwest's Failure to State a Claim

Plaintiffs argue that the Amended Complaint states a claim on behalf of Midwest.  But the allegations cited at Page 11 of individual Plaintiffs' Response Brief do not set forth a specific claim on behalf of Midwest or assert that Midwest suffered damages.  The proper inquiry under *Twombly* is whether a legally cognizable claim is plead within the four corners of the complaint, not whether one could infer a claim that the plaintiffs might have asserted.

Midwest attempts to assert a state law claim for invasion of privacy by misappropriation in the Second Amended Complaint.  The Colorado Supreme Court held that an individual may assert a common law tort claim for invasion of privacy by appropriation in *Joe Dickerson Ass. v. Dittmar*, 34 P.3d 995 (Colo. 2001).  However, there is no indication that the Colorado Supreme Court would extend this cause of action to companies. *See id*. at 1001 ("We now hold that Colorado recognizes the tort of invasion of privacy by appropriation of *an individual's name or likeness*.) (emphasis added).  Midwest has not stated a cognizable Colorado common law claim.

9

**Plaintiffs Are Not Entitled to Joint and Several Relief**

Paragraph 147 of the Second Amended Complaint (Docket #51-2) persists in seeking "judgment in favor of the individual Plaintiffs, jointly and severally". Plaintiffs cite no authority for the proposition that they are entitled to joint and several relief and offer no compelling rationale for this request. Therefore, it should be denied.

**Conclusion**

Plaintiffs' Amended Complaint failed to state viable claims for relief under F.R.C.P. 12(b)(6), F.R.C.P. 9(b) and *Twombly* because it did not contain sufficient specific factual allegations to assert claims that were plausible on their face due to the vague, conclusory and contradictory nature of the allegations. The Second Amended Complaint does not cure these fundamental deficiencies. Therefore, JNS respectfully requests that this Court hold that Plaintiffs have failed to state a claim against JNS in either the Amended Complaint or the Second Amended Complaint.

DATED this 23rd day of June, 2008.

*s/ C. Adam Foster*

———————————————————————
Kristi L. Blumhardt
C. Adam Foster
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1700 Broadway, Suite 1900
Denver, Colorado 80290
Tele: (303) 293-8800
*Attorneys for Defendants JNS Constructions Services, LLC and John Herzer*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Donald J. Kaufman
kaufman@coloradoattorney.com
Kaufman & Kaufman, LLC
*Attorneys for Plaintiffs*

Kenneth R. Stettner
Bruce Anderson
banderson@stetmil.com
Stettner Miller, P.C.
*Attorneys for Midwest Drywall Company, Inc.*

*s/ C. Adam Foster*
_____
Kristi L. Blumhardt
C. Adam Foster
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1700 Broadway, Suite 1900
Denver, Colorado 80290
Tele: (303) 293-8800
*Attorneys for Defendants JNS Constructions Services, LLC and John Herzer*